on behalf of the Atlanta, Mr. Peter Micheling, on behalf of the African-Americans, Mr. Scott Carroll. May it please the Court. Good morning, Justice Homan, Justice Shostak, Justice Huston. My name is Peter Micheling. I'm here this morning on behalf of the appellant, William Willetts, who is present in an open court this morning. We're here today to ask this Court to vacate, reverse, and revamp the entire trial court decision in this matter. With all due respect to Judge Zopp of the Circuit Court of the 22nd Judicial Circuit, we believe before you this morning is a case that is contrary to the manifest weight of the evidence. Partially results as an abuse of discretion. Comes before you seeking some de novo review on a couple of issues that there is, in fact, a disconnect from applying some common sense. And the result of this trial court decision is inequitable and intolerable to my client, Mr. Willetts. Specifically, I would ask the Court to focus on the record in this case. I believe the testimony and the exhibits and evidence clearly will direct you down the path that we would request that you go. Specifically, relative to the value of the Lake in the Hills real estate, we believe Judge Zopp's finding in that regard that there is zero value to that property in Lake in the Hills is contrary to the manifest weight of the evidence. In fact, we believe it is contrary to all the evidence in the case. That's a property that was in foreclosure? This property was in foreclosure at the time it went to trial. That is correct. You know, before you go on, Mr. Nicholson, there was a motion pending to strike portions of the reply brief. Yes. And I think we probably should address that. The motion was taken under advisement, and after reviewing the reply brief, we find that apparently there are portions of the reply brief that are not supported by the record. And at this time, we admonish you to be more careful with respect to conforming the brief to facts that are in the record. And we're striking those unsupported portions of the brief, the factual allegations of the brief, that are not part of the record for purposes of your arguments. Any questions on that? Obviously, with due respect to the court, we disagree, but we'll proceed with the court's permission. Yes. Thank you. I apologize, Mr. Nicholson. That's quite all right. Relative to, in response to Justice Hudson's, the Lake in the Hills property wasn't foreclosure. The parties and all the evidence in front of the court, in addition to the fact that it was in foreclosure, meaning a foreclosure case pending, was that it had value. There was a listing price out there. There was a mortgage amount in the evidence. Both parties testified that they believed the property had value. I believe both parties argued that the value of that property was approximately $62,000 at the time the case went to trial. And Judge Zopp, in his findings, specifically found it had that $62,000 value, but for a foreclosure case pending, which he then negated that entire $62,000 and said he had zero, simply by virtue of the foreclosure case pending. What was the mortgage on the property? The mortgage at that time, I believe in the record, is in the $180,000 range, Your Honor. So wouldn't it be – it would not be illogical for him to say, you owe $180,000 on the mortgage, the list price or the value is $62,000. What money is anyone going to get from the sale of that property? We believe that the property had been liquidated at that time, that it would have paid off the mortgages and netted approximately $62,000 to be divided between the parties. And I believe that's what I argued in our closing, and I believe that is approximately the value that the appellee argued in her closing arguments. So you're saying that above and beyond the mortgage price, $62,000 would have gone to the parties? That is correct. What was the property evaluated at at that time? At that point in time, both of the parties testified to different values. I believe one of the parties testified that it was approximately $240,000 in value, and I believe my client testified that he thought it was more appropriate at $270,000. I can't recall right now, but I believe there is a listing agreement in evidence that had a listing price, too, but I do not recall that listing price off the top of my head. What part did the husband play in the reason the property went into foreclosure? I believe my client obviously had vacated that property in June of 2006. He was in a transition from employment at that time from the Paltine School District, where he was earning six-figure income, taking a similar job at the Canelan School District for about $25,000 or about $75,000. He was ordered to pay the mortgage amount until September or October of 2006, when a child support order was entered, commensurate with his then income at Canelan, and Mrs. Willits was then ordered to pay the mortgage. The property was in fine shape, not in foreclosure, until then my client's employment with Canelan was terminated at the end of the school year in 2007, and he went on unemployment. Was it the plan that the wife would make the mortgage payments with the child support payments the husband would make, and then when the husband failed to make the child support payments, she failed to pay the mortgage, and the mortgage therefore went into foreclosure? Right. Was that the scenario? My client became under an order to pay child support, statutory child support, in the fall of 2006, and she became under an obligation to pay the mortgage, okay? My client then, when he lost his employment with Canelan, filed a motion to reduce his child support, and absolutely then that's when the trouble started, because there just wasn't enough cash flow in the marriage to pay that mortgage based on the child support that he would be able to pay based on his unemployment compensation. One of the things that's perplexing in this case is, according to the record, your client was maintaining a lifestyle that cost almost $6,000 a month to meet his obligations, and yet there's a problem with the child support. So how do you reconcile that problem? Well, that problem is one of whether or not in this case there is imputed income that should be forced, and I know that's an aggressive term, forced on my client for those purposes. And respectfully, we do not believe this is an imputed income case for child support purposes.  My client, first of all, was not voluntarily unemployed. Obviously, he had been employed, and I believe the testimony that for 19 of the 20 years of marriages when this case went to trial, he had been employed, and the only year that he had not been employed had been from 07 to the time it went to trial in 08. So there is no evidence that my client is voluntarily unemployed. Well, let's say we accept that argument, at least for the moment, that there was no evidence that he was voluntarily unemployed. He chose not to seek a full appointment. He's still receiving income of almost, or monies coming into him of almost $6,000 a month. He's not paying child support. Doesn't that seem to be a problem? Judge, obviously, on its face, it seems to be a problem, but here's the issue. He is receiving funds from his family, specifically his mother, to help meet his obligations, to pay his COBRA expenses, to pay his new residential accommodations that he is now in since June of 06, okay? And I don't believe that money from his mother can be imputed to him for child support purposes under the current status of Illinois law. Why is that? A number of reasons, again. Because to impute that income to him, I think he has to be voluntarily unemployed, and there's no evidence that he's voluntarily unemployed after the Canaan job is terminated, that he is attempting to evade his support obligation, and I don't believe there's evidence that he's attempting to evade his support obligation, because virtually from early July on, when we filed our motion to modify support, he was also under order to be reported with a job block. To the court on an ongoing basis, which he complied with, and he has never been presented after July 1st of 2007 with any type of employment opportunity that he has failed to take advantage of. But there's a disconnect here. Here's what I'm struggling with. According to your logic, if you carry it out to its logical extension, somebody becomes, admittedly, involuntarily unemployed. They're fired from the company, let go, whatever. So they can have money coming in their household of $10,000 a month, and they don't have to pay child support because they were involuntarily unemployed? That's not the state of the law, is it? Well, I believe the state of the law is that you have to pay child support based upon the respective percentage for the number of children involved, net income as defined by our statute. And I don't believe this money that he's receiving from his mother creates that child support obligation, because if it does, it then means extended family, once they help you at all, have to continue that help indefinitely. And I don't believe that's right from the standpoint of families trying to – if every family would help take care of their own in their own backyard, so to speak, that would be a great thing. But once you do that, are you then obligated to do that forever? I hope not. There's no obligation to the third party in this case. Obviously, while the argument is, well, he's receiving this substantial sum of money, some of that should be paid toward the child support. If his mother or the family stops giving him these quote-unquote gifts – and they appear to be gifts, unless you're claiming they're debts, but I don't see that – then when the gifts start being paid, then obviously it's a different situation. Why are you getting the idea that the third party is obligated to indefinitely continue to pay them? How does that end up in this case? Because what you're saying is that you're holding a support obligation at a level that is absolutely not commensurate with his earning ability at that point in time. Well, didn't the court find that he was capable of a substantial earning ability, but they found that his attempts at gaining employment were minimal? And part of the child support obligation is based upon that finding as well? Which is not against – which is consistent with the law. Well, that is indeed, I believe, what Judge Zahn made as part of one of his findings. That is correct. So it was not only specifically relying on the monies given by the mother, but also by his ability to seek employment and his minimal efforts to seek safe, correct? Right. And obviously that was the court's finding, but again, obviously I don't believe that's what the evidence indicated, as I believe he, in good faith, diligently, repeatedly, from July 1st, 2007, was out there trying to get gainful employment after the job at Cainman was terminated. Do you agree that the money from the mother was a gift to him? No, no. There is one gift. Our position is without a doubt that in June of 2006, she gifted $55,000 to my client. But other than that, my client's testimony, I believe the information in front of this court, by the mother's testimony and the documentary evidence based on how she from time to time sent her checks, was that these were loans to her son. And I believe that the trial court struggled with that, but also the trial court understood that there was no ability to repay any of these loans out based upon his unemployment situation. Didn't the mother testify that the signature of the loan, I think on each check, a couple of checks was written along and she said that was not her handwriting and she didn't write that on the check? I believe that is in fact what she testified to, Judge, yes. And didn't your client testify that on occasion referred to the money as gifts? I don't recall that testimony. My client actually also testified and agrees that the $55,000 received in June of 2006 was a gift. But the other monies, other than miscellaneous, like $100 at Christmas or something, yes, I believe you may have testified that was gifts, but the primary source of funds from his mother were loans, according to his testimony. And I believe her testimony, although you're correct again that I believe sometimes my client wrote the word loan on the check when he received it, as opposed to Mom writing loan on the check when she sent it to him. And were any, are there any documents to support the allegation that the money was a loan, not a gift? No. No, Judge, there are no promissory notes in the record. As I believe Mr. Willett's mother testified, were family. So you realize that the standard of the manifesto of the evidence test would mean that no reasonable person could agree with the ruling of the trial court. So you would have to find that no reasonable person could agree with the trial court's ruling that these were gifts, even in light of all the lack of documentary evidence. I understand. Mr. McGlynn, can you address some of the distribution of the marital assets, and more particularly, I understand that you're somewhat troubled by the contribution to that Indiana retirement fund, in fact, that the court had awarded the wife a part of that retirement fund that your client had paid. Pre-marriage. I'll call your attention to the fact that time is up, but go ahead and answer that particular question. Thank you, Justice. Yes, well, we believe that the judge found the entire portion of my client's Indiana retirement account to be marital, when we believe distinctly there was evidence in front of the court, by virtue of the testimony and documents, that a three-year portion of that was clearly non-marital. Is the court able to delineate, or would you be able to delineate, which portion of that three years, how much would be non-marital and how much would be marital? Well, first of all, the court didn't find it. They haven't found the whole thing to be marital. I understand that, but I think they struggled with being able to separate that or break it down, correct? Well, and that's what I have my disconnect on, because I thought the evidence was clear. You start employment there. There was clear testimony when employment started. There was clear testimony as to when his involvement in the pension plan began. There was clear testimony as to when they got married. It's clearly all set up there that that period should be non-marital. Thank you very much, Judge. Thank you. Hi, I'm Scott Farrell. I'm a beginner law firm. I represent the Plaintiff Appellee in this case, Linda Willits, who was present in open court. I also represent her in the pre-decree proceedings as well. Before we get started, Mr. Brown, just while it's fresh in my mind, can you address, Mr. Farrell, can you address that last issue I asked? Why is your client entitled to the entire pension fund from the Illinois, or from the Indiana pension, as opposed to minus the three years when they weren't married? That's a good question, Justice. The issue is his lack of evidence. This case involved a difficult collection of discovery. There were petitions for sanctions, motions for sanctions out there. The defendant did not comply with discovery. One of those items would have been the planned documents that came with the Indiana retirement fund, which would have included how the service was earned, what percentage of years could he get additional time in the summer. We don't know those answers. Twelve years could have been done in ten years of time. The defendant appellant had the opportunity to provide us those documents, but he did not. Based on that, the court made a wise decision based on the evidence in place. Thank you. Before I go into any further argument of addressing Attorney Mickling's argument, I just want to let you know in this case, this was a case that was contested on every issue, including child custody from the beginning. There was motions by the plaintiff for noncompliance with court orders, as well as petitions just for simply getting vacation time with the children in the summer. But based on that, there's basically only four arguments that Attorney Mickling's bringing forward. The issues are net income for child support purposes, and really this is a mainstream Rogers case as I see it. This is income from all sources. Gifts and loans are included in that. However he characterizes that, there's no documentation of loans. It is clearly money that is incremental to the defendant appellant, and it should be included for child support purposes. What about the argument he seems to be alluding to? Well, this is family. I mean, family members typically are not that conscious of documenting what these monies are being used for, so it's not surprising there's a lack of documentary evidence. Either way, what's your response to that? There's case law that supports that. The court does look at the suspect when it's money coming from a family. If it's actually a loan, is it a gift, especially during a time of divorce? The implication is he's trying to designate these as loans, so it's not a child support purpose. So the courts look at that consistent with perhaps it could be a gift, too, as well. And what specific factors do you call our attention to that indicate it's a gift, not a loan? What specific factors? I looked at that $55,000 loan and what it is. Was it a loan or a gift? In the defendant appellant's financial affidavits that were filed with the court, he included a $55,000 loan. When he testified about that, he couldn't explain any documents supporting why the $55,000 was put in the loan. Curiously, it did match the $55,000 gift letter that was received as a result of when he purchased the home. In that issue, both the defendant and his mother testified that they knew he could not receive a loan if that was not a gift document at that time. That's within the evidence itself. Regarding issues regarding retroactivity, too, as well, we believe that it was child support orders, our temporary support order, and the court has discretion to go back and modify that. We believe that the court properly set child support based on all the factors that were in place, including his income from all available sources. That clearly was an issue throughout this case, and the court properly revised the temporary order support order regarding child support. I believe that while the defendant argues that there was a withholding order put in place for $131, I believe that's irrelevant because of the fact that this was still a temporary order, which could have been modified at any time before the judgment was entered. As far as the property distribution, you mentioned the value of the home. There is more than that. The defendant had the opportunity to clearly get an appraisal of this residence any time throughout the proceedings. He claimed it was two different values, $300,000, $279,000, not just one value. The plaintiff appellee, Attorney Micklin, was correct in stating that she valued it $240,000. That was based on the listing price, backing off selling costs and commissions, and there's also deficiency as well as taxes and legal fees that have been paid to as well that would go into the value of the home as well. And was that deficiency presented to the court? It was in the argument, yes, that there was legal fees. An exact dollar amount wasn't presented at that time, but yes, the issue that she was defending the foreclosure was brought before the court. The trial court found that the net value of the marital residence was zero. What was that based on? Based on foreclosure, it was based $62,000 based on the evidence that was presented by both parties. And the reason it was dissipation was actually the value that was imputed was the $62,000 because it went to foreclosure because the defendant appellant was not paying his child support obligation. Prior to this obligation to pay child support, there was not consistent payment of the mortgage at that time. Is that correct? No, it equaled exactly the mortgage. The mortgage was paid until he moved out of the residence, and then he stopped paying. There was an order put in place that he got the mortgage current, and then the child support payment equaled the amount of the mortgage payment at that time. Other issues regarding Discovery II as well. He mentions he was unemployed as one of his issues why he shouldn't pay child support. As part of Discovery, there was a letter from his employer that said there was correspondence, there was a review, and as a result, he was terminated for cause. As part of the Discovery noncompliance, we asked for a copy of that letter to see what actions were actually put in place. We never received a letter from his employer or from the defendant appellant regarding what actions caused his termination. It could have been his involuntary employment that caused it. He could have resigned. We don't know what happened because we don't see the employment review that was not provided by the defendant appellant in this case too as well. It's the law that regarding the three, I think it's three years of pension that apparently the court decided was marital property because there was insufficient records to support it. Isn't there a presumption that it's not marital property if it was earned outside of the marriage? There is a presumption. It's up to the other side to rebut that presumption, and tell me what you did to rebut that presumption. First, there was no Discovery complaint. We asked for Discovery. That was number one. He did not comply with Discovery for planned documents so we could see how service was actually earned. The fact that there was 12 years, yes, that number in effect, it shows that there may have been service that would have been on its face has been earned outside the marriage. However, there may be the possibility that if you work a summer, you get additional credit as far as service. There are some school districts that do that too as well. You can earn additional credit during the year, whereas 1.25 is an actual 1.25 of calendar year. Is none of that in the record? None of it's in the record. We didn't get the documents regarding the plan. It was another issue of not complying with Discovery. So the statement you're making is not based on the records of what other school districts do? No, it's just on the record that we don't have documentation to support any deposits, any plan. Was there any dispute about the three years of retirement credits? Well, the dispute would be solely on the number, I'm sorry, on the amount of time? Not necessarily? Not the amount of time, but the amount of money. I thought there was no dispute that three years of this retirement fund was outside, was not marital property. It was outside the marriage. It occurred before he was married. We don't know that answer, Justice Goldman. The reality is we're not sure if he earned all his credit during the marriage. He was employed. He did start employment before that time, but we're not sure how dollars were deposited into the plan, when they were deposited into the plan, how much was deposited into the plan, and at what time. We only had a statement as of 2007, which only showed years of service credited. It didn't show deposits. Opening balance, the day it was started, first deposits made. We don't have any of that information to make that determination. Certainly there was 12 years of service, but there was nothing else besides that on the amount. But based on the trial court's decision, we believe that it should stand. There's no abuse of discretion on these issues. We believe that the evidence was clearly taken into place. The major issues regarding income, property, distribution, dissipation, child support payments, we should defer to the court on their decision on this matter. Thank you. Thank you. Rebuttal. Thank you, Mr. Justice. If I could please the court very briefly. This is not the Rogers case. The Rogers case is an imputed income case over a 20-year history where the gentleman was employed and on top of his employment received, quote-unquote, loans from family members that never was repaid. This is a situation where a man received a loan of $200,000 from his parents to help buy a home in Lake in the Hills, $100,000 of that $200,000 that was repaid four years before the divorce case was even filed. Isn't that a factual question for the trial court, whether it was a loan or a gift? Yes, ultimately I believe that is a factual determination for the trial court. And how do we reverse the trial court's factual determination based on the record? Well, because I believe the evidence indicates that when you repay something, that is clear indication that it was a loan and there was a partial repayment of $100,000 of that $200,000. I believe that addresses that loan. But just because I'm trying to... When they paid the mother-in-law the money back, she was kind of taken aback, like, I didn't expect this to be paid back. Am I getting the wrong indication? I believe that's what Mrs. Willits testified to, but I don't believe that was the evidence or the testimony of my client or his mother. Counsel, one thing you didn't have an opportunity to address earlier. What is your position on the holding of the trial court that all of the money or whatever credits he may have received from the retirement system in Indiana is marital property? What's your position on that? Our position is, in regards to my client's Indiana retirement, that there is clearly a three-year portion of that that is not marital. Opposing counsel is arguing, hey, there's no proof here. We have no way of determining how that accrued in terms of his retirement system in Indiana. Presumably, obviously the law would be that it's not marital going in because he became employed there before the marriage. But how do you answer his argument that there's no documentation either way to establish the value of this? I don't think we need to establish what the value of that is. We know because we can establish it now after the divorce. You say three years in the retirement plan is not marital. The plan will tell us what the value of that three-year initial period was. And we distinctly had evidence in front of the court in regards to the date of employment, the date of involvement in the plan, and the date of the marriage, which clearly delineated that three-year period. What ultimately the value of that was can be determined when they start receiving the benefits at retirement age. Thank you very much, Your Honor. All right. Thank you. The case is taken under advisement and the court stands in recess.